ORIGINAL

# In the United States Court of Federal Claims

No. 11-10C
(Filed July 28, 2014)
NOT FOR PUBLICATION

FILED
JUL 28 2014
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
JAMES HEDMAN CLARK,                           *
                                              *
                Plaintiff,                    *
                                              *
        v.                                    *
                                              *
THE UNITED STATES,                            *
                                              *
                Defendant.                    *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant's motion to dismiss plaintiff's amended complaint. For the reasons discussed below, the motion is **GRANTED**.

### I. BACKGROUND

Plaintiff, James Hedman Clark, filed this lawsuit *pro se* on January 5, 2011. *See* Compl. In response to plaintiff's original complaint, the government filed a motion to dismiss and plaintiff subsequently requested leave to file an amended complaint --- which was granted by the Court. Mister Clark then filed his amended complaint, a document consisting of approximately 628 handwritten pages and 2,255 numbered paragraphs.[1] The government responded with a motion to dismiss plaintiff's amended complaint in its entirety ("Def.'s Mot.").

---

[1] The Clerk's Office received on the same day nine documents submitted by plaintiff, titled as follows: (1) Plaintiff's First Amended Complaint; (2) Amended Table of Exhibits Incorporated by Reference in Plaintiff's Amended Complaint; (3) Attachment Filed under Seal Incorporating Statements by Reference in Plaintiff's First Amended Complaint; (4) Motion for Leave to Stay Judgment Regarding Plaintiff's Patent Infringement Cause of Action; (5) Memorandum to Court; (6) Verified Derivative Action; (7) Plaintiff's Rule 23 Motion for a Defendant Class Action Certification Order; (8) Motion Seeking Leave of Court for Plaintiff to File Supportive Memorandum for Class Certification in Excess of 20 Pages; and (9)

The first 228 pages of plaintiff's amended complaint contain lengthy descriptions of the asserted jurisdictional bases for plaintiff's claims, facts spanning several decades, and various exhibits submitted by plaintiff. *See* Am. Compl. at 1–228D. Among other things, this portion of the amended complaint covers topics such as plaintiff's education, medical, and employment history, the surveillance of plaintiff by various government agencies, and the development of the purported invention which underlies the bulk of plaintiff's allegations. *See id.* Plaintiff's invention, which is entitled the Out of Area (OOA) program, is a student behavior modification program designed for use in schools. *See id.* ¶¶ 189–96. In the remainder of his amended complaint, plaintiff alleges twenty-eight causes of action, many of which contain multiple counts. *See id.* at 231–628.

Plaintiff's invention, the OOA program, is based on the premise that "[d]isruptive and disrespectful student behaviors almost always occur when students are not in their assigned/proper area" --- that is, when they are "out of area." Am. Compl. ¶ 192. The OOA program includes at least four documents created by plaintiff --- a student quiz, a referral form, a parental information notice letter, and a hall pass. *Id.* ¶ 238. On April 22, 2005, Mr. Clark obtained a federal copyright registration for the OOA program. *See id.* ¶¶ 315, 421, 1070; Pl.'s Claim of Copyright(s) and Assignment Ownership, Ex. V, ECF No. 8. A copy of the document registered by plaintiff was filed with the court. *See* Filings Made Under Seal, ECF No. 6. While Mr. Clark's amended complaint contains numerous allegations, the thrust of his complaint relates to his allegation that the St. Louis Public School District (SLPS) "became aware" of plaintiff's OOA program and "developed a 'plan of action' to [T]ake Plaintiff's OOA program trade secrets in January 2004,"[2] *see* Am. Compl. ¶¶ 261–62, and that the federal government subsequently infringed his copyright of the OOA program, *see* Am. Compl. ¶¶ 846, 849, 887, 934. More specifically, plaintiff contends that the United States Department of Education's Response to Intervention (RTI) program infringes his copyright. *See, e.g.*, Am. Compl. ¶¶ 846, 849, 934, 1168. According to plaintiff, RTI is "an inclusive partnership between all school personnel and families to identify and address the behavioral academic needs of both regular and special education students," Am. Compl. ¶ 856, which was based upon plaintiff's copyrighted OOA program, *see, e.g.*, Am. Compl. ¶¶ 847–48, 887.

---

Memorandum in Support of Plaintiff's Rule 23 Motion for a Defendant Class Action Certification Order. All but the last four identified were filed with the court. *See* Order (June 12, 2012) at 2.

[2] Plaintiff uses somewhat unusual formatting, such as the bracketing of upper-case letters outside of the context of altering a quotation. The Court will simply quote the Amended Complaint as written, rather than correcting such formatting choices or errors.

On June 15, 2005, plaintiff applied for a patent for the OOA program by submitting United States Patent Application No. 11/153,118 to the United States Patent and Trademark Office (USPTO). *See* Am. Compl. ¶ 1896; Ex. 253, ECF No. 11; Def.'s Mot App. at 13. The USPTO never issued a patent based on this application, and on October 25, 2010, issued a Notice of Abandonment to plaintiff because he did not "timely file a proper reply" to a letter from the USPTO. *See* Def.'s Mot. App. at 13–14.

Plaintiff previously filed a similar lawsuit in the United States District Court for the Eastern District of Missouri. *Clark v. Crues*, No. 4:05CV1344, 2007 WL 906702 (E.D. Mo. March 23, 2007). In that case, Mr. Clark alleged that school and school system employees, as well as the City of St. Louis, the Board of Education, and the SLPS, infringed the same patent application and copyrighted work at issue in this case. *Id.* In March of 2007, the district court granted summary judgment for the defendants, dismissing Mr. Clark's complaint with prejudice. *Id.* Mister Clark appealed to the Federal Circuit, and his appeal was denied on January 8, 2008. *Clark v. Crues*, No. 2007-1377, 2008 WL 145255 (Fed. Cir. Jan. 8, 2008). The present case appears to be based in large part on the same underlying facts, with many of the claims now styled as against the United States "acting through" the state and local entities that were named as defendants in Mr. Clark's prior litigation.

Plaintiff's amended complaint contains twenty-eight "causes of action," each of which contains between one and six counts. As explained in the government's motion to dismiss, the twenty-eight causes of action and their sub-counts can be broadly grouped into nine categories: (1) illegal exaction claims, Causes of Action 1 (Counts I–V) and 24; (2) secrecy order claims, Causes of Action 2 and 22 (Counts I–III); (3) tort claims, Causes of Action 3 (Counts I–VI), 4 (Counts I–II), 9, 15 (Counts I–III), 18, and 25–26; (4) copyright infringement claims, Causes of Action 5–8, 10–14, and 20 (Counts I–III); (5) unauthorized use of a patent claims, Cause of Action 19 (Counts I–III); (6) 19 U.S.C. § 1337 claims, Cause of Action 16; (7) Constitution Article I claims, Cause of Action 17; (8) Fifth Amendment takings claims, Causes of Action 21 (Counts I–II), and 23; and (9) implied-in-fact contract claims, Causes of Action 27–28.[3] The government has moved to dismiss plaintiff's entire amended complaint under Rules 41(b), 12(b)(1), and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). The government argues that the entire complaint should be dismissed under RCFC 41(b) because it fails to comply with the "short and plain statement" requirements of RCFC 8(a). Def.'s Mot. at 9. In addition, the

---

[3] The Court notes that Mr. Clark disagrees with the government's categorization of some of his claims. *See, e.g.*, Pl.'s Resp. to Mot. to Dismiss at 55. Any relevant points of disagreement will be discussed by the Court when addressing the cause of action at issue. Categorization is essential, however, in dealing with claims of such volume.

government contends that plaintiff's illegal exaction claims, secrecy order claims, tort claims, unauthorized use of patent claims, 19 U.S.C. § 1337 claims, Constitution Article I claims, and implied contract claims should be dismissed for lack of jurisdiction pursuant to RCFC 12(b)(1), and that plaintiff's remaining claims for copyright infringement and takings under the Fifth Amendment should be dismissed for failure to state a claim pursuant to RCFC 12(b)(6). *Id.* at 9–10. Mister Clark has filed a response in opposition to the government's motion to dismiss ("Pl.'s Resp."), and the government filed a reply in support of its motion ("Def.'s Reply").[4]

## II. DISCUSSION

### A. Legal Standards

While *pro se* plaintiffs' filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this lenient standard "does not relieve a pro se plaintiff from meeting jurisdictional requirements." *See, e.g., Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 F. App'x 860 (Fed. Cir. 2004) (Table) (emphasis omitted). Under RCFC 12(b)(1), claims brought before our court must be dismissed when it is shown that we lack jurisdiction over their subject matter. When considering a motion to dismiss for lack of subject-matter jurisdiction, a court will normally accept as true all factual allegations made by the pleader and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v.*

---

[4] On September 26, 2013, plaintiff also filed two motions for sanctions against defendant pursuant to RCFC 11. Pl.'s 1st Mot., ECF No. 84; Pl's 2nd Mot., ECF No. 85. Defendant filed a timely reply on October 24, 2013. Plaintiff makes four arguments for sanctions: that defendant intentionally misrepresented its address; improperly executed certificates of service; caused procedural irregularities; and caused unnecessary delay by not opposing plaintiff's two motions for leave to file. 1st Mot. ¶¶ 6–9; 2nd Mot. ¶¶ 14–38. Defendant requests, *inter alia*, $152,880 in fines against defendant. 1st Mot. at 15–16; 2nd Mot. at 19–20. After evaluating the evidence the Court finds that defendant has not made any material misrepresentations and that none of defendant's conduct demonstrates even a modicum of the lack of candor that could trigger Rule 11 sanctions. First, defendant never misrepresented its address; the Department of Justice uses a centralized processing facility for United States Postal Service mail and a different address for private courier delivery. Plaintiff's confusion about these addresses is not due to defendant's malfeasance. Second, defendant may delegate agents to accept service of filings; they did so. Third, the court has no jurisdiction to consider issues that were previously before the Federal Circuit. Moreover, any procedural irregularities within this case are issues to be addressed with the court, not defendant. Fourth, defendant's decisions not to oppose plaintiff's motions, embodied in its notice of no opposition, ECF No. 73, complied with our rules.

*Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (requiring that on a motion to dismiss for lack of subject-matter jurisdiction the court views "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate").

Because the Tucker Act, 28 U.S.C. § 1491, does not create any substantive rights, a plaintiff must identify a separate source of law that creates a right to money damages for his claims to be within our jurisdiction. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part)). The test for determining whether a statute or regulation can support jurisdiction in our court is whether it can be fairly interpreted as mandating compensation. *See, e.g., United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003); *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983); *Fisher*, 402 F.3d at 1173–74; *Contreras v. United States*, 64 Fed. Cl. 583, 588–92 (2005).

In addition, to survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When determining whether to grant a Rule 12(b)(6) motion, the court "must accept as true all the factual allegations in the complaint" and make "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). However, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Rule 8(a) requires complaints filed in our court to contain "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1)–(2). Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss" the case. RCFC 41(b).

## B. The Government's Motion to Dismiss this Case

Defendant has moved to dismiss the amended complaint in its entirety, under RCFC 41(b), arguing that violations of the "short and plain statement" requirements of RCFC 8(a) warrant dismissal. Def.'s Mot. at 10–12. While this complaint of roughly 628 pages is anything but short, the Court does not find this a suitable ground for dismissing the case under RCFC 41(b). Such dismissals should

be reserved for occasions when a plaintiff fails to clarify a complaint after being ordered to do so, *see Lewis v. United States*, 31 Fed. Cl. 607, 611–13 (1994), and usually entail the allowance of a further pleading. *See Ciralksy v. C.I.A.*, 355 F.3d 661, 669–71 (D.C. Cir. 2004); *Gharb v. United States*, No. 12-911C, 2013 WL 4828589, at *5 (Fed. Cl. Sept. 9, 2013). While the sheer length of the complaint makes this difficult, the bases of Mr. Clark's claims can be discerned, ultimately to his detriment.

In many respects, Mr. Clark's complaint (as well as many of his other filings) is a very impressive document. Plaintiff obviously thought a great deal about his claims, and spent much time and effort to research, organize, and handwrite a pleading of daunting length. But, as we shall see, despite employing hundreds of pages and thousands of paragraphs, Mr. Clark was not able to sufficiently allege claims that are both within our jurisdiction and upon which relief can be granted.

Our court does not have jurisdiction over claims against defendants other than the United States. *See* 28 U.S.C. §§ 1491(a), 1498(a); *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (holding that jurisdiction of our court's predecessor was limited to "money judgments in suits brought for . . . relief against the United States"); *D.R. Smalley & Sons, Inc. v. United States*, 178 Ct. Cl. 593, 598 (1967); *Dyck v. Albertelli Law*, 98 Fed. Cl. 624, 626 (2011). To the extent that Mr. Clark's claims do not allege a violation of the law by the United States, they do not fall within our jurisdiction.

In this regard it is worth noting that while RCFC 8(a) does not support dismissal of the lawsuit under RCFC 41(b), it does bear on the other two grounds for dismissal. The Supreme Court has held that the Federal Rules of Civil Procedure counterpart to RCFC 8(a) may require dismissal for failure to state a claim upon which relief can be granted, when allegations are conclusory and implausible. *See Iqbal*, 556 U.S. at 678–80; *Twombly*, 550 U.S. at 555–57. Many of plaintiff's allegations are directed toward entities such as state and local government agencies and private companies "acting through" the United States. Since our jurisdiction does not extend to claims against parties other than the United States, the Court concludes that allegations of federal government involvement which fail the standards of *Twombly* and *Iqbal* must be dismissed under RCFC 12(b)(1).

### *1. Plaintiff's Illegal Exaction Claims: Causes of Action 1 and 24*

Plaintiff's first and twenty-fourth causes of action are based on an illegal exaction theory. *See* Am. Compl. at 231, 234, 248, 252, 254. An illegal exaction occurs when money is "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citations omitted). The Federal Circuit

has held that our court has jurisdiction over illegal exactions that are based upon "an asserted statutory power." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996) (citations omitted).

The majority of Mr. Clark's illegal exaction counts must be dismissed because they allege exactions by entities other than the United States, and do not actually allege the illegal collecting of money under color of law, as is required to state a claim for an illegal exaction. *See Aerolineas Argentinas*, 77 F.3d at 1573. The first four counts of plaintiff's first cause of action do not sufficiently allege that the purported exactions were executed by the United States. For example, the first two counts allege wrongdoing by various state and local government agencies and employees, resulting in the illegal exaction of $7,000 and $125,000, respectively, from plaintiff. *See* Am. Compl. at 229–47. The first count is based on the allegation that a local board of education employee was wrongfully paid $7,000 for plaintiff's invention, *see id.* ¶¶ 973–77, and the second count alleges that the wrongful termination of plaintiff's teaching license/certificate constitutes an illegal exaction for which plaintiff should be compensated $125,000, *see id.* ¶¶ 1043–48. Mister Clark frames each of these allegations as having been carried out by the United States "acting through" various state and local government agencies and employees, but this characterization is insufficient to bring his claims within our jurisdiction. Merely asserting that actions allegedly taken by state and local government agencies and employees were actually taken by the United States does not make it so. Plaintiff has not identified sufficient support for his theory that the United States government orchestrated the chain of events detailed in these allegations that would bring his claim into the realm of plausibility, as is required by *Iqbal*.[5] *See Iqbal*, 556 U.S. at 678.

Similarly, the third and fourth counts of plaintiff's first cause of action do not sufficiently allege action by the United States. The fourth count alleges wrongdoing by a state agency, the Office of the Secretary of State of Missouri, *see* Am. Compl. at 252–53, over which our court has no jurisdiction. *See Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1308 (Fed. Cir. 2007). The third count alleges that the United States, acting through two private law firms and the USPTO, illegally exacted $6,675 from plaintiff by charging him various fees related to his patent application, while allegedly knowing that his patent application for the OOA program would be denied. *See* Am. Compl. at 248–51. To the extent that this count alleges wrongdoing by private law firms, it clearly falls outside of this court's jurisdiction.

---

[5] In fact, for most of plaintiff's allegations, no support is offered for the proposition that the United States government caused the chain of events at issue. Instead, the complaint merely contains the broad assertion that "Defendant, acting through [a state or local government agency or employee]," did such things as, "told Plaintiff his teaching certificate would expire," Am. Compl. ¶ 994, "threatened Plaintiff by way of a communication," *id.* ¶ 997, or caused his teaching license to expire, *id.* ¶¶ 1044, 1047–48.

To the extent, however, that plaintiff alleges wrongdoing by the United States itself, through the actions of the USPTO --- a federal agency --- plaintiff's claim still must be dismissed because the alleged "exaction" by the USPTO is based upon plaintiff's voluntary payment of processing fees for his patent application --- a far cry from "monies that the government has required to be paid contrary to law." *See Aerolineas Argentinas*, 77 F.3d at 1572–73. Because the government is permitted to collect fees from those seeking to have their patent applications processed, and there has been no allegation that the government exceeded its authority in collecting plaintiff's fee, this is not an illegal exaction.

Although the fifth count of plaintiff's first cause of action identifies alleged wrongdoing by various federal agencies, it too fails because it does not allege that the government illegally required the payment of money by plaintiff under color of law. *See* Am. Compl. at 254–56. Mister Clark alleges that the United States Copyright Office and the Library of Congress "[E]xacted Plaintiff's financial deposit [for registration of the OOA program for copyright protection] . . . only to fail in upholding proper recognition, communications and protection upon which Plaintiff paid money accordingly," Am. Compl. ¶ 1075, and thus, plaintiff's deposit was illegally exacted. *Id.* ¶ 1076. But unless there has been some allegation that the government exceeded its authority in charging plaintiff this fee, such as by charging plaintiff a higher amount than it is permitted to charge, the voluntary payment of a fee for copyright registration cannot constitute an illegal exaction. *See Aerolineas Argentinas*, 77 F.3d at 1572–73. Moreover, copyright registration does not impose a burden on the federal government to "protect" plaintiff's registered work; rather, copyright registration is a tool to assist owners of registered works in enforcing their own copyrights. *See, e.g.*, 17 U.S.C. § 1203. Lastly, plaintiff's twenty-fourth cause of action, which alleges wrongdoing by federal, state, and local government agencies, does not seek the return of money illegally exacted from plaintiff. *See* Am. Compl. at 611–15. Instead, this claim appears to be based on the government's failure to pay royalties to plaintiff for its alleged use of his invention. *See id.* Since this claim does not seek the return of money illegally exacted under color of law, it also fails to state a claim for an illegal exaction.

### 2. *Plaintiff's Tort Claims: Causes of Action 3, 4, 9, 15, 18, 25, and 26*

A number of Mr. Clark's causes of action sound in tort, and thus concern conduct that can only come under our jurisdiction when it is the result of a breach of contract. *See* 28 U.S.C. § 1491(a)(1) (granting the Court jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*") (emphasis added); *Wood v. United States*, 961 F.2d 195, 197–98 (Fed. Cir. 1992).

The tort claims alleged by Mr. Clark are contained in causes of action three, four, nine, fifteen, eighteen, twenty-five, and twenty-six.[6] *See* Am. Compl. at 353–409C, 430–38, 476–83, 616–22. Cause of action three alleges the misappropriation of plaintiff's invention --- the OOA program --- by a number of entities, including state and local government agencies and employees, private law firms, federal agencies and contractors, and private telecommunications companies. *See* Am. Compl. at 353–77. Plaintiff's fourth cause of action alleges the misappropriation of trade secrets related to his OOA program by such entities. *See* Am. Compl. at 378–409C. In his ninth cause of action, Mr. Clark alleges that various state and local government agencies and employees[7] misappropriated an industrial design of his creation when they used a hall pass that is substantially similar to that designed by plaintiff for the OOA program. *See* Am. Compl. at 430–38. Plaintiff's fifteenth cause of action alleges the improper acquisition of trade secrets related to plaintiff's OOA program by a variety of federal, state, and local agencies and employees, as well as private companies. *See* Am. Compl. at 476–83. Mister Clark's twenty-fifth cause of action alleges that the government, "acting through unknown agencies, [has] subjected Plaintiff and his industry to unfair practices in Import trade," Am. Compl. ¶ 617, has "caused permanent damage to Plaintiff's domestic industries," *id.* ¶ 2226, and has destroyed his company, *id.* ¶ 2227.[8] Finally, plaintiff's twenty-sixth cause of action alleges the misappropriation and infringement of "proprietary data information" related to the OOA program. *See* Am. Compl. at 619–22.

Each of these claims sounds in tort, and thus, must be dismissed for lack of jurisdiction.[9] *See* 28 U.S.C. § 1491(a)(1); *Sterner v. United States*, 198 Ct. Cl. 979

---

[6] Mister Clark contends that these claims do not sound in tort, but rather are takings claims. *See* Pl.'s Resp. at 55. The Court does not think that these claims can be plausibly construed as takings claims, but dismissal would still be warranted if they were so construed for the reasons set forth in section II.B.9. Plaintiff also references the Tucker Act as the basis of these claims, Pl.'s Resp. at 55, but as noted, that Act does not create any substantive rights, and Mr. Clark has not identified a separate source of law that creates a right to money damages.

[7] Plaintiff once again alleges that these actions were taken by the United States, acting through various other agencies and individuals, but does not provide any support for the contention that the United States played any role in this chain of events. Plaintiff also seems to allege that a private law firm "perhaps" played a role in misappropriating his design. Compl. ¶ 1660–61.

[8] Plaintiff does not provide further elaboration of these claims in his discussion of this cause of action. *See* Am. Compl. at 616–18.

[9] In addition, plaintiff's trade secret claim must be dismissed because a concept disclosed in a patent (or here, a patent application), cannot be a trade secret. As the Federal Circuit has explained: "A trade secret is secret. A patent is not. That

(1972) (claims for misappropriation of trade secrets sound in tort); *Liberty Ammunition, Inc. v. United States*, 101 Fed. Cl. 581, 591 (2011) (claims for unfair competition sound in tort). The Court notes that there are substantial overlaps among many of plaintiff's claims, and the legal bases for these claims are at times difficult to discern. Thus, to the extent that any of the claims discussed within this section allege the unauthorized use of a patent, they do not fall within our court's jurisdiction for the reasons set forth in section II.B.3, and to the extent that they may allege copyright infringement, they do not state a claim for the reasons set forth in section II.B.8.

### *3. Plaintiff's Unauthorized Use of Patent Claims: Cause of Action 19*

Mister Clark alleges in his nineteenth cause of action that local, state, and federal government agencies and employees, as well as private companies and law firms, infringed his patent.[10] *See* Am. Compl. at 515–36. Plaintiff's patent infringement claims are based on his patent application for the OOA program (Patent Application Number 11/153,118), from which no patent ever issued. *See id.* Since this application was never granted, and plaintiff has not identified a patent of his that was ever issued by the USPTO, plaintiff has failed to establish that he is the owner of an issued patent --- a jurisdictional prerequisite to this court's consideration of claims of patent infringement by the United States government. *See* 28 U.S.C. § 1498(a) (establishing the court's jurisdiction over claims of unauthorized use or manufacture of "an invention described in and covered by a patent of the United States"); *Amgen, Inc. v. Genetics Inst., Inc.*, 98 F.3d 1328, 1332 (Fed. Cir. 1996) ("[O]f course suit cannot be brought for infringement of a patent that has not issued."); *Martin v. United States*, 99 Fed. Cl. 627, 632–33 (2011) (holding that our court lacks "jurisdiction over a claim for alleged infringement of an unissued patent"). Indeed, in plaintiff's prior litigation, his patent infringement allegations were dismissed for this same reason, and the Federal Circuit upheld that dismissal. *See Clark v. Crues*, No. 4:05CV1344 JCH, 2007 WL 906702 (E.D. Mo. March 23, 2007), *aff'd*, 260 Fed. App'x. 292, 294 (Fed. Cir. 2008) (holding "[Clark] can maintain an action for patent infringement only if and when he has been issued a patent").

### *4. Plaintiff's Secrecy Order Claims: Causes of Action 2 and 22*

The second and twenty-second causes of action in plaintiff's amended complaint allege the violation of a secrecy order related to plaintiff's patent

---

which is disclosed in a patent cannot be a trade secret." *Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1357 (Fed. Cir. 2011).

[10] As explained above, this Court does not have jurisdiction over Mr. Clark's claims to the extent that they allege wrongdoing by entities other than the United States.

application. *See* Am. Compl. at 257–352, 588–602. The Court lacks jurisdiction over these claims as well, because plaintiff fails to meet the jurisdictional prerequisites for bringing such a suit in our court. A plaintiff may seek compensation related to a secrecy order under 35 U.S.C. § 183 by either of two "alternative litigation routes" --- (1) an applicant who has submitted a patent application subject to a secrecy order can pursue an administrative route in which the applicant first files a petition for compensation with the federal agency who issued the order before filing suit; alternatively, (2) the owner of an issued patent that was previously subject to a secrecy order can file a suit in the Court of Federal Claims. *See* 35 U.S.C. § 183; *Hornback v. United States*, 40 Fed. Cl. 524, 526–27 (1998). Here, Mr. Clark's claim fails because he has not identified any secrecy order related to his patent application --- a jurisdictional prerequisite for a claim under either litigation route. Instead, plaintiff states that his application "may, or may not have been subjected to a secrecy order." *See* Am. Compl. ¶ 1079. But even if Mr. Clark had properly identified a secrecy order, he failed to exhaust administrative remedies before filing suit, as is required by the first litigation route. *See Constant v. United States*, 16 Cl. Ct. 629, 635 (1989), *aff'd*, 884 F.2d 1398 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1002 (1989) (holding that administrative exhaustion was required). Under the second route, Mr. Clark's claim would also be defective because he is not the owner of an issued patent. Accordingly, plaintiff's secrecy order claims are dismissed.

### 5. *Plaintiff's 19 U.S.C. § 1337 Claim: Cause of Action 16*

In his sixteenth cause of action, Mr. Clark purports to bring a claim for "unfair practices of exploitation trade" pursuant to 19 U.S.C. § 1337(*l*), which allows "an owner of [a] patent, copyright, mask work, or design" that is subject to a trade exclusion order to seek compensation in our court under 28 U.S.C. § 1498. *See* Am. Compl. at 484–93. Because he fails to allege the existence of an exclusion order, the Court lacks jurisdiction over this claim. *See Zoltek Corp. v. United States*, 58 Fed. Cl. 688, 694 (2003).

### 6. *Plaintiff's Constitution Article I Claim: Cause of Action 17*

In his seventeenth cause of action, Mr. Clark alleges that the government deprived plaintiff of his "constitutionally protected IP rights." *See* Am. Compl. at 494–501. This allegation is based on Article I, Section 8, Clause 8 of the Constitution, which empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8. Because this clause is not money-mandating, the court does not have jurisdiction over this claim. *See, e.g., Brown v. United States*, 105 F.3d 621, 623–24 (Fed. Cir. 1997) (holding that our court does not have jurisdiction over Fourth Amendment claims because it is not a money-mandating); *Tasby v. United States*, 91 Fed. Cl. 344, 346

(2010) (finding that the Court lacks jurisdiction over claims brought pursuant to the Ex Post Facto Clause, the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, and the separation of powers doctrine because these provisions are not money-mandating).

### 7. Plaintiff's Implied-in-Fact Contract Claims: Causes of Action 27 and 28

Mister Clark's twenty-seventh and twenty-eighth causes of action purport to be implied-in-fact contract claims, but do not sufficiently allege the elements needed to prove an implied contract. *See* Am. Compl. at 623–28. The elements of an implied-in-fact contract claim in our court are: (1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and, (4) actual authority on the part of the government's representative to bind the government. *Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009).

Mister Clark's twenty-seventh cause of action is based on an alleged failure to "fairly and honestly consider proposals" --- presumably, this failure pertains to the SLPS's purported acquisition of plaintiff's OOA program. *See* Am. Compl. at 623–24. Plaintiff fails to allege any of the elements necessary to prove the existence of an implied contract in his discussion of this claim, and instead, merely makes numerous broad assertions about various parties who "baited and enticed Plaintiff to submit his OOA program" to the SLPS.[11] *See id.* In his twenty-eighth cause of action, Mr. Clark also fails to allege an implied contract. Although he mentions "No-Bid contractual agreements approved in closed sessions," his assertions regarding the actions of various school district employees and private companies do not contain any of the details necessary to state a plausible claim for an implied contract with the United States government.[12]

---

[11] In support of this cause of action, plaintiff makes a variety of claims of doubtful relevance to an implied contract claim. For example, plaintiff asserts that "Defendant acting through SLPS BOE did not Fairly and Honestly consider Defendant, acting through Rob Lee and/or School Service System, proposal or Bid because Lee provided No Bid or proposal." Am. Compl. ¶ 2245. Plaintiff also states, "Defendant, acting through the identified parties herein, knowingly participated in improper business practices and personal conflict of interest activities violating 48 CFR Part 3 during the summer and Fall of 2004 and throughout the 2004–05 school year." *Id.* ¶ 2247.

[12] Instead, the Complaint contains unusual allegations such as: "Defendant acting through [local school district employees, the SLPS Board of Education, and attorneys at a private law firm], did not consider Rob Lee's Bid, nor Lee's subcontractor Touchdown Enterprise, Inc., Bid Fairly and Honestly because they didn't provide any Bids and No Bids were sought for said contract." Am. Compl. ¶ 2253. Mister Clark elaborated: "Although Plaintiff refers to an enticed proposal as compared to an unsolicited proposal, dated August, 2004, said proposal is more like

In sum, because Mr. Clark does not explain how the actions identified in these claims constitute the formation of implied contracts, and does not allege the elements needed to prove such a claim, his allegations are insufficient to invoke this court's jurisdiction. *See Twp. of Saddle Brook v. United States*, 104 Fed. Cl. 101, 109–10 (2012) (citing *Ridge Runner Forestry v. Sec'y of Agric.*, 287 F.3d 1058, 1060 (Fed. Cir. 2002)) (explaining that dismissal for lack of subject-matter jurisdiction is appropriate when allegations as to the existence of an implied contract are "insubstantial"). In addition, Mr. Clark's allegations do not plausibly implicate the United States as a contracting party, and thus, fall outside of our jurisdiction for this reason as well. Finally, to the extent that Mr. Clark attempts to style these claims as a bid protest, he has not established this Court's jurisdiction because he has not identified a federal solicitation, proposed award, award, or alleged violation of a statute or regulation in connection with a procurement or proposed procurement, as is required by 28 U.S.C. § 1491(b). *See* Am. Compl. ¶ 2246.

### 8. *Plaintiff's Copyright Infringement Claims: Causes of Action 5–8, 10–14, and 20*

Mister Clark makes numerous allegations of copyright infringement. *See* Am. Compl. at 410–30 (Causes of Action 5–8); Am. Compl. at 439–75 (Causes of Action 10–14); Am. Compl. at 542–56 (Cause of Action 20). Plaintiff's eighteenth cause of action for "Infringement of IP Rights" may also be based on a copyright infringement theory.[13] *See* Am. Compl. at 502–14. At issue in each of these allegations is Mr. Clark's copyright of various materials for his OOA program. The majority of these claims are directed toward the actions of state and local government employees --- primarily, local school and school system employees, as well as private individuals. *See, e.g.*, Am. Compl. ¶¶ 1629–30, 1693, 1741–43, 2002. As indicated above, this court has no jurisdiction over such claims.

Plaintiff also alleges wrongdoing by a number of federal agencies in support of his copyright infringement claims. For example, he contends that the federal

---

a Bid to assist the SLPS and show them how to implement his OOA program at a compensable rate the same as his teaching salary." Am. Compl. ¶ 2254.

[13] It is difficult to discern the basis of this claim, despite its title, because plaintiff merely states that numerous individuals and entities "Infringed Plaintiff's Exclusive IP Rights," without offering critical details concerning the alleged infringement, such as a description of what was allegedly infringed or the nature of such infringement. *See, e.g.*, Am. Compl. ¶¶ 1837–49. Plaintiff also describes interference with his internet access and telephone service in this count. To the extent that this claim is thus based in tort, it is dismissed for the reasons stated in section II.B.2, and to the extent that it may be based on a patent infringement theory, it is dismissed for the reasons stated in section II.B.3.

government "obtained unauthorized access to Plaintiff's personal computer activities including access to his OOA computer program trade secret systems while Plaintiff developed and maintained his OOA expressions." Am. Compl. ¶ 1590. He further alleges: "Shortly after Defendant acting through unknown agencies obtained Plaintiff's OOA program Trade Secrets and computer program systems Defendant acting through the BIS an agency of the DOE filed numerous Revisions [in the Federal Register] that may, or may not have pertained to the Governments obtainment of said IP." *Id.* ¶ 1597. The heart of plaintiff's complaint with respect to the federal government seems to be that the government, upon obtaining access to his OOA program, deprived plaintiff of his exclusive right to this work by distributing it to its contractors and sub-contractors. *See id.* ¶¶ 1638–39, 1694–95, 1735, 1745. This claim seems to be based in part on the idea that contractors such as RTI International distributed programs allegedly derived from plaintiff's copyrighted work. *See id.* ¶¶ 1694–95.

These claims, too, must be dismissed for several reasons. First, many of these claims are not based on the infringement of any interest protectable by copyright law. It is axiomatic that "the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself." *Meade v. United States*, 27 Fed. Cl. 367, 371 (1992) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)). This distinction is codified in 17 U.S.C. § 102, which states:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). Although Mr. Clark alleges infringement of his OOA program, the bulk of his allegations concern the use of the *ideas* underlying his program, rather than the expression of those ideas. That copyright protection does not extend to such ideas is clear, and thus, to the extent that plaintiff's claims are based on such a theory, they must be dismissed for failure to state a claim.[14] *See, e.g., Feist Publ'ns*, 499 U.S. at 344–50 (discussing the distinction between ideas and expression); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 581 (1985) (explaining that section 102 of the Copyright Act "extends copyright

---

[14] The government characterizes the nature of Mr. Clark's allegedly infringed work as a "business idea" in its motion to dismiss. *See* Def.'s Mot. at 21–22. Mister Clark disputes this label, apparently misunderstanding the government's argument as one that Mr. Clark's invention is a business, or an idea of a business. *See* Pl.'s Resp. at 67. This misunderstanding is not relevant to the Court's decision, as the government was merely discussing the distinction between the copyright of ideas versus the expression of ideas. *See* Def.'s Mot. at 21–22.

protection to an author's literary form but permits free use by others of the ideas and information the author communicates"); *Boyle v. United States*, 200 F.3d 1369, 1373 (Fed. Cir. 2000) ("Copyright protection does not extend to ideas expressed in a copyrighted work."); *Shipkovitz v. United States*, 1 Cl. Ct. 400, 403 (1983) ("[I]t is well known in copyright law that copyright registration only affords protection against the manner in which a writing is written, and does not protect the ideas contained therein."); *Meade*, 27 Fed. Cl. at 371 (holding that a heart-shaped picture of the Earth is not copyrightable because it is an idea, not an expression).

Mister Clark also alleges infringement of the expression of his copyrighted work in his allegations concerning the OOA hall pass. *See, e.g.*, Am. Compl. ¶¶ 1629, 1735, 1741. Upon a careful reading of Mr. Clark's allegations, it is evident that Mr. Clark's grievance is with state and local government officials, and thus presents a matter which falls outside of this court's jurisdiction. Moreover, even if this matter were within our jurisdiction, it was previously adjudicated and would thus be dismissed on *res judicata* grounds. *See Clark v. Crues*, No. 4:05CV1344, 2007 WL 906702 (E.D. Mo. March 23, 2007) (dismissing Mr. Clark's claim for infringement of his OOA program copyright by school and school system employees and the Board of Education of the City of St. Louis), *aff'd*, 260 F. App'x 292 (Fed. Cir. 2008). To the extent that Mr. Clark has alleged infringement by the federal government of the expression of his OOA work, Mr. Clark's allegations fail to plausibly allege such infringement. The amended complaint is replete with "threadbare" assertions of federal government involvement, but contains few details from which the Court could reasonably conclude that such involvement occurred, and thus is insufficient to state a claim. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555. In addition, a comparison of the copyrighted OOA program with the alleged infringing work does not reveal sufficient similarity of expression to constitute an infringement of Mr. Clark's copyright. *Compare* "Filings Made Under Seal," ECF No. 6, *with* Exs. 192–94, 211, 265–66 to Compl., ECF No. 11.

### *9. Plaintiff's Fifth Amendment Takings Claims: Causes of Action 21 and 23*

Mister Clark's remaining claims, as alleged in his twenty-first and twenty-third causes of action, are for Fifth Amendment takings. *See* Am. Compl. at 557–80, 603–10. The Fifth Amendment prohibits the taking of private property by the government for public use without just compensation. This court has exclusive subject-matter jurisdiction over takings claims against the federal government seeking more than $10,000 in compensation. *See* 28 U.S.C. § 1491(a)(1); *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1309–10 (Fed. Cir. 2008).

Mister Clark's twenty-first cause of action contains two counts, the first of which is based entirely on alleged actions by state and local government agencies

and employees and, thus, does not fall within our jurisdiction.[15] *See* Am. Compl. at 564–75. Although much of the second count of that cause of action and the twenty-third cause of action similarly alleges wrongdoing by entities other than the United States government, these counts do identify some actions allegedly taken by federal government agencies resulting in the purported taking of plaintiff's OOA program.[16] Nevertheless, these claims must also be dismissed because their allegations of federal government involvement are implausible and, for the most part, unsupported by any detail whatsoever. For example, in the twenty-third cause of action, Mr. Clark alleges that:

> Defendant, acting through unknown state of MO and Federal agencies of the Government, physically deprived Plaintiff from disclosing and from communicating the subject matter of his personal (OOA IP) property with the public and did so using Prior Restraint, Censorship and Mass Surveillance, and is continuing said Physical deprivations . . . .

Am. Compl. ¶ 2188. In count two of the twenty-first cause of action, Mr. Clark alleges that:

> Defendant acting through Congressional Acts and Regulations of the Federal Government approved Legislation and Bills which subjected Plaintiff's OOA IP to being [T]aken by the Government . . . .

*Id.* at ¶ 2086.

While such claims do, at least on their face, identify the federal government as the purported actor, they fail to plausibly plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and instead contain mere "threadbare" assertions regarding the federal government's involvement. *See Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555–56). This is insufficient to survive a motion to dismiss. *See id.*

Moreover, even if plaintiff had sufficiently identified action taken by the federal government as the basis of his claims, his takings claims would still fail because they do not sufficiently allege ownership of a compensable property interest. *See Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed.

---

[15] To the extent that Mr. Clark alleges that the actions of these state and local individuals and agencies were orchestrated by the federal government, this count contains no supporting information to support that assertion.

[16] Plaintiff also alleges federal government involvement in the condemnation of his personal residence. The Court finds no support for the assertion that the federal government played a role in this process. *See* Am. Compl. ¶¶ 2094–95.

Cir. 2004) (citing *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003)). Because Mr. Clark alleges the taking of property not covered by an issued patent, and not protected by his copyright because it is a business idea, he has not alleged the taking of a legally cognizable property interest. Therefore, his takings allegations are insufficient to state a claim against the United States, even if they can be read as properly alleging federal government involvement.

As explained above, to the extent that any of the counts within plaintiff's twenty-eight causes of action allege wrongdoing by any party other than the federal government or its agents, these are dismissed for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Causes of action 1–4, 9, 15–19, 22, and 24–28 are also dismissed for lacking subject matter jurisdiction. In the alternative, to the extent they would be construed as alleging a taking or a copyright infringement, causes of action 3, 4, 9, 15, 18, 25 and 26 are dismissed for failing to state a claim for which relief may be granted pursuant to RCFC 12(b)(6). And causes of action 5–8, 10–14, 20–21, and 23 are also dismissed under RCFC 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, the government's motion to dismiss Plaintiff's entire Amended Complaint is hereby **GRANTED** pursuant to RCFC 12(b)(1) & (6). Plaintiff's three motions for sanctions are **DENIED**, and all other pending motions are **DENIED** as moot. The Clerk shall enter judgment accordingly. No costs shall be awarded.

**IT IS SO ORDERED.**

_____
VICTOR J. WOLSKI
Judge